## DINEHART VS. THE TOWN OF LA FAYETTE and others.

An injunction should not be granted without notice upon the verified complaint alone, when material allegations therein are made "upon information and belief." In such case those allegations should be otherwise proved.

But if the opposite party is served with a rule or notice, and has an opportunity to deny such allegations, they may be taken as true if not denied.

A petition of freeholders to a town clerk requested him to call a special meeting of the town "for the purpose of raising by tax the sum of three thousand dollars to pay bounties to volunteers to fill the quota of said town, and in case the quota is not filled by enlistment, the money so raised to go for the support of the families of drafted men—the amount per volunteer or drafted men's families to be apportioned in accordance with the amount paid to volunteers in other towns." The clerk's notice calling the meeting stated its object in the same words. The record of the meeting merely showed that "said tax of three thousand dollars" was voted, without further defining the object thereof. The act under which the tax was raised (ch. 39, Laws of 1864) provides that no more than $200 shall be paid as bounty to any volunteer or to the family of any drafted man. The complaint in this action avers that only *nine* volunteers were required at any time to fill the quota of the town under all calls. *Held*, that the tax was not invalid on the ground that the petition, notice and record did not limit the amount to be paid each volunteer or family to $200. DOWNER, J., *dissenting*.

*Held, further*, that under the act the electors were not limited, in fixing the amount of the tax, to the precise amount required to fill the quota, which might be unknown, but might raise more to provide against contingencies.

Chap. 39, Laws of 1864, entitled "An act to authorize towns, cities and incorporated
    villages to raise money by tax for the payment of bounties to volunteers for the
    military service of the United States, and to provide for the levy and collection
    of the same," *held* to be valid.
The taxes levied under the proceedings of various town meetings in this case *held* to
    be valid.

APPEAL from the Circuit Court for *Monroe* County.

The plaintiff, a resident freeholder of the town of La Fayette
in said county, sought in this action to restrain the collection
of taxes assessed upon his land in 1864, for the purpose of
paying bounties to volunteers in the military service of the
United States, &c., on the ground of certain alleged irregularities
in the proceedings under which such assessments were made;
and on other grounds. There were special town meetings
held in said town on the 6th and 20th of February, the 11th
of March and the 6th of September, 1864, at which the taxes
in question were voted, the first being before and the others
after chap. 39, Laws of 1865, took effect.

Chap. 13 of the General Laws passed at the extra session of
the legislature in 1862, contained the following provisions:
" Sec. 1. The qualified electors of each town, city, [or] incor-
porated village, and the county board of supervisors of each
county, shall have power, at any legal meeting thereof, to vote
to raise such sum or sums of money as they may deem neces-
sary for the payment of bounties to volunteers, residents of
such town, city, incorporated village or county, mustered into
the military service of the United States or of this state, and
shall also have power to offer such bounties and to determine
and fix the amount thereof, to be paid to each of such volun-
teers ; and all such sum or sums of money shall be subject to
and paid out on the order of the board of supervisors of each
town, and of the proper auditing board of each city, incorpo-
rated village and county; *provided*, that no greater sum of
money shall be voted or raised for the payment of bounty to
volunteers by any such county board or electors, than has been
pledged to them by such county, town, city or incorporated

Dinehart vs. The Town of LaFayette et al.

village, or pledged to persons advancing the money for such purpose; and no moneys contributed voluntarily as bounties to volunteers, shall ever be refunded by any county, city, town or incorporated village." "Sec. 5. A special meeting of the electors of any town, city or incorporated village, may be called by the proper authorities, on the written request of any five electors of such town, city or incorporated village."

The first meeting above mentioned was held upon a written request of twelve qualified voters of said town of La Fayette "that a special town meeting be held in said town for the purpose of raising money to pay volunteers for United States service." The notice of such meeting given by the town clerk, after specifying the time and place, stated that it was "for the purpose of raising money to pay bounty to volunteers for United States service, to the amount of twelve hundred dollars; should part or all of said money not be used for the specified purpose, the same to return back to said town, and also to give any instruction to town board of supervisors that is necessary; a request for such meeting having been duly made to the undersigned by five qualified voters of said town, specifying therein the purposes above set forth as the objects of the meeting." The complaint objects that said request and notice do not state any purpose for which said meeting was to be held, that was authorized by law, and that the notice does not follow the request in stating such purposes. The following is the record of the proceedings of said special meeting: "Doings of the town of La Fayette, of special town meeting for bounty to pay volunteers, February 6th, 1864. Motioned and seconded that one hundred dollars be paid to each volunteer for service in the United States. Said motion passed and adopted. Second, motioned and seconded that twelve hundred dollars be the sum to be voted for, and the balance, after paying said bounties, the same to return to town for town purposes. Third, motioned and seconded that orders draw seven per cent. interest. Said motion passed." [Attested by the town Clerk.]

" Special town meeting held in and for the town of La Fayette. on the 6th of February, 1864, for the purpose of raising money for volunteers for United States service.  Inspectors' returns for said town is as hereinafter stated.  The whole number of votes is thirty-five for raising said money to the amount of twelve hundred dollars, and ten votes against raising said money."  This statement is signed by Nathaniel Graves and two others as inspectors; and the complaint alleges that said Graves was not at the time one of the duly elected and qualified supervisors of the town, and further alleges, upon information and belief, that he was not in any manner authorized to act as such inspector.  It further alleges that at the time said meeting was held, no money had been pledged to any volunteer in the United States service, or in the service of the state of Wisconsin by said town, nor had any sum of money whatever been pledged by said town to any person or persons advancing money for such purpose.

Chapter 39, Laws of 1864 (which took effect on the 12th of February of that year), contains the following provisions:

" Section 1.  The qualified electors of each town, city or incorporated village in this state, shall have power, at any annual or special meeting thereof, to vote to raise by tax such sum or sums of money as they may deem necessary, to pay bounties to volunteers in the service of the United States, who may have enlisted or shall hereafter enlist and become credited to such town, city or village, upon its quota under any call of the President of the United States, heretofore made or which may hereafter be made for volunteers for the military service of the United States, or for the purpose of giving aid to the families of volunteers or of drafted men mustered into the service of the United States or of this state: *provided*, that such bounty shall in no case exceed two hundred dollars to any one volunteering, except in such cases as the towns, cities or villages have hereto voted to raise a larger sum than the amount specified in this act for said purposes."

"Section 2. A special meeting may be held in any town, city or incorporated village of this state for the purpose or purposes mentioned in section one of this act, upon a written petition to the clerk thereof, signed by five or more qualified electors and freeholders of such town, city or incorporated village, which petition shall set forth the purpose or purposes for which such special meeting is asked by the petitioners, together with the amount of money sought to be appropriated or raised by tax at such meeting for each of said purposes; and it is hereby made the duty of every such clerk, upon presentation to him of such petition, to call a special meeting of the qualified electors of said town, city or village, to be held at the place where the last annual election in such town, city or village was held, by posting notices of the same in three or more public and conspicuous places in such town, city or village, stating the time when and the place where such meeting will be held, *and the object of the same*, together with the amount of each tax proposed to be raised thereat,        *        *        *        *        *, *provided*, that the electors assembled at any such special meeting, not less than twelve in number, may, before proceeding to vote on the question of raising any such tax, agree or determine upon a less sum to be voted for any such purpose than the amount named therefor in the petition aforesaid. Such meeting shall be opened and conducted by the proper officers authorised to act as inspectors and clerk thereof, and a correct and complete record of the proceedings of every such meeting shall be kept, in which shall be stated the amount of each tax voted thereat, and the purpose for which the same was voted; and such proceedings shall be signed or attested by the officers thereof, and filed and recorded in the office of the clerk of the proper town, city or village."

Section 10 contains provisions legalizing the acts of meetings held before or after the passage of said act, precisely similar to those of sec. 10, chap. 14, Laws of 1865, recited in the case of *Brodhead et al. v. City of Milwaukee et al.*, ante, p. 624.

The petition for the second of the above named special meetings of said town of La Fayette, requested the clerk to call the same "for the purpose of raising by vote of said town seven hundred dollars to pay volunteers in the United States service," and specified the day. The notice by the clerk, after stating the time and place for said meeting, stated further that it was "for the purpose of raising money to pay bounty to volunteers for the United States service, to the amount of seven hundred dollars; should part or all of said money not be used for the specified purpose, the same to be returned back to said town; and also to give any instruction to town board of supervisors that is necessary. A request for said meeting having been made to the undersigned by five qualified voters of said town, specifying therein the purpose above set forth as the object of the meeting." The complaint alleges the same objections to the request and notice in this as in the preceding case. The record of the meeting is as follows: "La Fayette, February 20th, 1864. Special town meeting convened pursuant to notice. Board not being full, N. Graves and O. N. Smith in place of T. A. Doane and J. M. Finn, absent. Oaths were then administered and meeting was open for business. Vote was then taken to set the amount levied at seven hundred dollars. Vote was taken by raising the right hand. Nine in favor and four against. Motioned before meeting to have orders draw seven per cent. interest. Said motion passed unanimous. Moved also to have ths amount discretionary with the board to give such volunteer. Vote passed—nine in favor and five against." [Attested by the Town Clerk.] "Special town meeting held in and for the town of La Fayette, on the 20th of February, 1864, for the purpose of raising money for volunteers for United States service. Inspectors' return for said town is as hereinafter stated: The whole number of votes is twenty-eight; of which number twenty-three is for raising said money to the amount of seven hundred dollars, five votes against raising said money." This statement was signed by

S. P. Anderson, Nathaniel Graves and O. N. Smith, as inspec-
tors; and the complaint alleges that neither said Graves nor
said Smith was a supervisor of said town, and authorized by
law to act as such inspector. It further alleges that the town
clerk, who acted as clerk of said meeting, did not take the
oath prescribed by law, but only the following : " I solemnly
swear that I will support the constitution of the United States
and the constitution of the state of Wisconsin, and will per-
form the duties of inspector of this meeting according to law,
and will studiously endeavor to prevent all fraud, deceit or
abuse in conducting the same, according to the best of my
ability." It is further alleged that the proceedings do not show
that said sum of $700 was to be used for any purpose author-
ized by law. The petition for the third meeting requested
that the same be called on a specified day " for the purpose of
raising five hundred dollars to pay volunteers." The notice
posted by the clerk, after specifying the time and place, stated
that said meeting was " for the purpose of raising five hundred
dollars to pay bounties to volunteers for United States service ;
should part or all of said money not be used for the specified
purposes, the same to return back to the town; and also to
give any instruction" &c., &c., pursuing the form of the
previous notices. The record of the meeting is as fol-
lows: " Inspectors' return of special town meeting held in
and for the town of La Fayette, on the 11th day of March,
1864, for the purpose of raising money for volunteers for Uni-
ted States service. Inspectors' return for said town meeting
is as hereinafter stated. The whole number of votes is twenty-
four, for raising five hundred dollars, of which number twenty-
three for raising said money, and one against said money." The
complaint avers, in substance, that neither the petition, notice
nor proceedings show that said five hundred dollars were to be
raised for any purpose authorized by law; and that the notice
did not follow the request in stating the object of the meeting.
The petition for the call of the last meeting above mentioned,

requested the clerk to call the same "for the purpose of raising by tax the sum of three thousand dollars to pay bounties to volunteers to fill the quota of said town, and in case the quota is not filled by enlistment, the money so raised to go for the support of the families of drafted men—the amount per volunteer or drafted men's families to be apportioned in accordance with the amount paid to volunteers in other towns. This meeting to be called at the earliest date." The notice given by the clerk stated that the meeting would be held "on Tuesday, September 6th," without specifying the year or the hour of the day. The plaintiff objects to the petition and notice that they do not show that the meeting has to be held for any purpose authorized by law. He also objects to the notice for its defective statement of the *time* of the meeting. The record of the meeting is as follows: "Meeting met, pursuant to notice, at 9 o'clock, Sept. 6th, 1864. The vote resulted as follows: Twenty-two for raising tax, and fifteen against, and one scattering. The tax was declared to be raised. Voted that Wm. Bush, E. H. Anderson, Loyd Angle and L. Prescott be appointed a committee to raise and disburse money for volunteers. Voted that the money now in the Bank of Sparta (390) be appropriated, the same as other volunteer funds." [Attested by the town clerk.] "The following is the result of a special town meeting held in and for the town of La Fayette in the county of Monroe, on the 6th day of September, 1864, made by the inspectors in and for said town: The whole number of votes cast was thirty-eight, of which number there was twenty-two for raising said tax, and fifteen against, and one scattering. The tax of $3000.00 was declared raised. The above report as set forth is just and correct. Given under our hands," &c., &c. Signed by the inspectors. The complaint avers that it does not appear from this record that any part of said sum of $3,000 was to be used for any purpose authorized by law.

The complaint further alleges, *upon information and belief,*

" that nine men were all that were necessary to fill the quota of said town at any time between the 1st of February and the 1st of October, 1864, under any and all of the calls of the President of the United States." It also alleges that three specified village lots in said town, of the value of $600, were improperly omitted from the assessment roll and tax list of said town for 1864 ; that a certain forty acre tract in said town was valued in the assessment roll for 1863 at $300, and also entered on the assessment roll for 1864 at the same valuation, but that after the assessment for 1863 and before the 1st of June, 1864, new structures were erected on said tract worth $1,000, which were liable to assessment in 1864, but were not included in the valuation of said tract for that year; and it is alleged, upon information and belief, that such omission was intentional.

The complaint was duly verified, and a temporary injunction was granted upon it by a commissioner without any notice to the defendants of the application therefor. At the next term of said court the defendants moved to set aside the injunctional order upon affidavits of the clerk of the board of supervisors of said county, the clerk of said town, and the person who acted as assessor therein in 1864, stating that the three village lots mentioned in the complaint, and the new structures on said forty acre tract, were duly entered with the just valuation thereof in the " assessment roll " for 1864, and were omitted from the " tax roll " by mere inadvertence of said clerk of the county board of supervisors, "in copying off said lands and new structures from the assessment roll into the tax roll." The plaintiff filed a counter affidavit of the treasurer of said county, that the town treasurer of said town of LaFayette had "returned the assessment roll of said town for 1864, which was placed in said town treasurer's hands for the collection of the real and personal property tax in said town of the year 1864, by the town clerk of said town ; that said roll * * is now in possession of affiant as treasurer of said

county ; that affiant has carefully examined said roll, and finds that [said three village lots] are nowhere entered and taxed for any sum whatever on said roll; and that there are no new structures on [said forty acre tract] assessed or taxed in said roll."

The court denied the motion to vacate; and from this order the defendants appealed.

*Rice & Bunn* and *L. W. Graves*, for the appellants :

The omission of property from the assessment roll does not vitiate the tax, unless intentional. *Weeks v. Milwaukee*, 10 Wis., 264; *Hersey v. Milwaukee Co.*, 16 Wis., 185. No objection that does not go to the very ground-work of the tax should render the whole tax invalid. *Mills v. Gleason*, 11 Wis., 497 ; 14 id., 618. That portion of the tax which is legal must be paid or tendered. *Myrick v. LaCrosse*, 17 Wis., 442. As to when the tax becomes a charge on the land, see Blackwell on Tax Tit., 105–16. 2. The facts on which an injunction issues must be stated positively. Hoffman's Prov. Rem., 322. 3. Sec. 10, ch. 39, Laws of 1864, legalizes the acts of the town officers in all proceedings previous to voting the tax. This does not affect any vested rights, but is a part of the act authorizing the raising of the taxes, and must be viewed with the other parts of it in determining the intention of the legislature. Smith on Stat. & Con. Construction, secs. 501, 503, and cases there cited. The provisions of the statute relative to the petition, notice, &c., are directory only. Smith, sec. 679 and cases cited. Acts of the legislature legalizing the acts of officers are valid where they do not affect vested rights. Smith, secs. 679–682.

*Montgomery & Tyler*, for respondent, contended that for the purposes of this motion the complaint stands admitted except as to the facts denied by the affidavits on the part of the defendants, and that as to these it was fully sustained by the affidavit of the county treasurer. 2. In this state equity will restrain the collection of illegal taxes. *Dean v. City of Madi-*

Dinehart vs. The Town of LaFayette et al.

*son,* 9 Wis., 402 ; *Delaplaine v. Madison,* id., 409 ; *Knowlton v. Rock Co.,* id., 410 ; *Foster v. Kenosha,* 12 id., 616 ; *Jenkins v. Rock Co.,* 15 Wis., 11. See also 4 Kern., 9 ; 8 Ind., 34 ; 18 Md., 254 ; 3 Ham., 72 ; 5 Minn., 95. Our statute provides that taxes shall be a lien on the real estate from the time they are assessed. Laws of 1859, ch. 22, sec. 31. 3. Towns have no authority to raise money to pay bounties to volunteers, except as conferred by statute, and such statute must be strictly construed and pursued. 13 Mass., 271 ; *People v. Works,* 7 Wend., 486. 4. The act of 1862 provides only for raising money by towns to pay bounties to volunteers where money had been pledged by the town to them or to persons advancing the money for such purpose ; and it limits the payment of such bounties to residents of said town. None of the proceedings in calling or holding the meeting under said act specify the foregoing as the purpose of the tax ; nor does it appear that any money had been so pledged. 5. The act of 1864 limits the amount of the tax to be raised to $200 for each one volunteering. It appears by the complaint that the whole number of volunteers to be raised by said town under all calls between February 1st, and October 1st, 1864, was nine, and that the whole amount of taxes raised in said town during that time was $5,400. 6. If the proceedings by which said tax was raised were illegal at the commencement of the action, the rights of the parties are not affected by any subsequent general or special legalizing act. *Dash v. Van Kleeck,* 7 Johns., 477 ; *Palmer v. Conley,* 4 Denio, 374 ; *Cornell v. Hichens,* 11 Wis., 353 ; *Sackett v. Andross,* 5 Hill, 327 ; Smith's Comm., pp. 531–577.

*By the Court,* DOWNER, J. The injunction in this case was granted on the complaint verified. If the statements in the complaint are to be taken as true, I am inclined to the opinion that the vote to raise the tax of three thousand dollars was illegal. The complaint alleges upon *information and belief,*

that "nine men were all that were necessary to fill the quota of said town at any time between the first day of February, 1864, and the first day of October, 1864, under any and all of the calls of the President of the United States made for volunteers for the military service of the United States." It appears to me that the language of the call or petition, notice and record of the meeting can be construed in no other way than as authorizing or directing the entire sum of three thousand dollars to be paid to volunteers in case the town could fill its quota. This would exceed the sum of $200 to each volunteer, authorized by the act to be paid. I think, therefore, so much of the tax as is made up of this three thousand dollars, is void. The majority of the court, however, are of opinion that the call, notice and town record do limit the sum to be paid to each volunteer, or the families of drafted men, to two hundred dollars, and that under the act the voters were not limited to the precise amount required to fill the quota, which is often unknown, but may raise more to provide against contingencies, and for these reasons and those given in the opinion in the case of *Brodhead v. The City of Milwaukee,* hold the tax valid.

We are of opinion that the order of the court below refusing to set aside the injunction should be reversed for the reason that it was granted *ex parte,* and one of the material allegations of the complaint, to wit, that above stated, without which it could not be sustained, is stated *on information and belief.* To sustain an injunction granted without notice, the essential allegations must be positively stated in the verified complaint, or they must be otherwise proved. It is different where an injunction is granted on rule or notice, so that the opposite party has an opportunity of denying the allegation before the injunction is granted. In such case, if the allegations on information and belief are not denied, they are taken as true.

The order of the circuit court is reversed, with costs, and the cause remanded for further proceedings.